**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MICHELLE ROBINSON, )  )  Plaintiff, )  ) v. )  ) CAROLYN W. COLVIN, ) Acting Commissioner of Social Security ) ) Defendant. ) | CASE NO. 1:13-cv-02420  MAGISTRATE JUDGE GREG WHITE  **MEMORANDUM OPINION & ORDER** |

Plaintiff Michelle Robinson ("Robinson") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I. Procedural History**

On September 20, 2010, Robinson filed an application for POD, DIB, and SSI alleging a

disability onset date of March 23, 2010. (Tr. 14.) Her application was denied both initially and upon reconsideration. Robinson timely requested an administrative hearing. *Id*.

On August 13, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Robinson, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 14.) At the hearing, Robinson, through counsel, moved to amend her alleged onset date to July 27, 2012, which would render her ineligible for POD and DIB. *Id*. Satisfied that Robinson understood the ramifications of her request to amend the alleged onset date, the ALJ dismissed the claims for POD and DIB. *Id*. On August 30, 2012, the ALJ found Robinson was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 23-24.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age fifty (50) at the time of her administrative hearing, Robinson is a "person closely approaching advanced age" under social security regulations. *See* 20 C.F.R. § 416.963(d). Robinson has past relevant work as a hand packager, commercial cleaner, and printed circuit board assembler. (Tr. 22-23.)

### III. Standard for Disability

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201. The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe

impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Robinson established medically determinable, severe impairments, due to multilevel disc protrusion with bilateral foraminal narrowing of the lumbar spine and obesity. (Tr. 17.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*. Robinson was found capable of performing her past relevant work, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 19, 22.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Robinson was not disabled. (Tr. 22-23.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.

*See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if

4

supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

*Treating Physician*

The Court will first address Robinson's second assignment of error, wherein she argues that the ALJ failed to give appropriate weight to the opinion of a treating source, Franklin B. Price, M.D., or to articulate valid reasons for not doing so. (ECF No. 17 at 13-15.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent

with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[1]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."

---

[1] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

*Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id.* It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

It is undisputed that Dr. Price qualifies as a treating source under the regulations, as the ALJ expressly refers to him as a "treating physician." (Tr. 19.) On April 6, 2011, Dr. Price opined that Robinson's ability to lift/carry was limited to five pounds. (Tr. 800; Exh. B24F.) He

7

did not specify whether this weight could be lifted "occasionally" or "frequently." *Id*. He further felt that Robinson could stand/walk one hour in an eight-hour work day in "1/7" without interruption. *Id*. He also suggested that Robinson could sit two hours in an eight-hour work day and thirty minutes without interruption. *Id*. Dr. Price indicated that Robinson could never climb, balance, stoop, crouch, kneel, or crawl. (Tr. 801.) Robinson's ability to push/pull was also affected. *Id*. He also indicated the following environmental restrictions were implicated: heights, moving machinery, temperature extremes, chemicals, dust, fumes, humidity, and vibration. *Id*. Though his handwriting is difficult to read, it appears the aforementioned limitations were based on Robinson's "severe spinal stenosis with [illegibile]."[2] (Tr. 800-801.) Dr. Price also appears to reference asthma in relation to the environmental restrictions. *Id*.

In her decision, the ALJ addressed this opinion as follows:

> The undersigned gives less weight to Dr. Price's medical source statement regarding the claimant's physical functional capacity because it is not consistent with his objective examination findings and his treatment modalities that he prescribed to the claimant. (Exhibit B24F; but see Exhibits B19F; B20F.)

(Tr. 22.)

The Commissioner's brief references the ALJ's finding, and then goes on to cite medical evidence of record not expressly referenced in the ALJ's opinion in support of rejecting Dr. Price's opinion. (ECF No. 18 at 12-13.) To the extent the Commissioner is attempting to advance reasons for rejecting Dr. Price's opinion that were not given by the ALJ, such arguments are of no value. As this Court has previously noted, "arguments [crafted by defense

---

[2] The Court's best guess as to the illegible portion is " diminished R of L/C motion," which could be interpreted as diminished range of lumbar/cervical motion – an observation consistent with Dr. Price's treatment notes. (Tr. 691, 694, 697.)

counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's 'post hoc rationale' that is under the Court's consideration." *Blackburn v. Colvin*, 2013 U.S. Dist. LEXIS 107313, 2013 WL 3967282 at * 8 (N.D. Ohio July 31, 2013). *See also Dutkiewicz v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 164305, 2013 WL 6089680 at * 6 (N.D. Ohio Nov. 19, 2013); *Hutchinson v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 123404, 2013 WL 4604561 at *14 (E.D.Mich. Aug. 29, 2013); *Jury v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 114843, 2013 WL 4427353 at *11 (N.D. Ohio Aug. 14, 2013); *Sarchet*, 78 F.3d at 307 ("we cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.")

Confining this Court's review to the reasons actually identified by the ALJ, the rejection of Dr. Price's medical source statement is based primarily on the belief that Dr. Price's functionality assessment was not supported by his own findings or by his course of treatment. (Tr. 22.) Reading the ALJ's opinion as a whole, she references Dr. Price's treatment notes that indicate Robinson had 70 percent decreased flexion, extension, and rotation with 4+ paravertebral lumbar muscle spasms. (Tr. 19.) It is unclear how this notation undermines Dr. Price's assessment. The ALJ also references Dr. Price's notation that he "did not observe any motor weakness or sensory loss, which would have otherwise been a sign of an inability to ambulate effectively. (Exhibit B19F, page 4.)" *Id*. While Dr. Price does indicate Robinson had no motor weakness or sensory loss in the referenced treatment note, the corresponding inference – that these would be a "sign of an inability to ambulate effectively" – does not appear anywhere in the referenced note and appears to be the ALJ's own inference. (Tr. 694.)

9

The ALJ also believes that Robinson's treatment was inconsistent with Dr. Price's assessment of Robinson's functional capabilities. (Tr. 22.) Elsewhere in the opinion, the ALJ notes that Dr. Price "has not prescribed anything more than narcotic medication," opined that Robinson was not a "surgical candidate," and did not prescribe a cane or ambulatory device. (Tr. 19.) The ALJ seems to imply that the use of narcotic pain medication is a conservative treatment modality that is inconsistent with the severe functional limitations assessed by Dr. Price. The Court fails to see how the use of narcotic pain medication in any way undermines Dr. Price's assessment of Robinson's functional limitations. It is unclear what other treatment options would have been more appropriate.

The ALJ also appears to assume that if Robinson was truly as limited as Dr. Price's assessment suggests, she would have been a surgical candidate. There could be a myriad of reasons why Dr. Price did not believe Robinson was a surgical candidate. Perhaps Dr. Price believed surgery would be an ineffective treatment modality or that Robinson's morbid obesity would complicate post-surgical recovery. Finally, the ALJ notes the lack of a prescription for a walker or a cane and again assumes that such a device would have been an effective form of treatment. While it might appear at first glance to be a reasonable assumption that such a device would ordinarily be prescribed for the level of limitations assessed, it is again unclear whether a cane or walker would help Robinson as her walking/standing limitations stem from back pain or decreased flexion rather than any problems with balance or instability.

The Court does not offer these possible alternative interpretations of the record because they are necessarily correct or more reasonable than those of the ALJ, but rather to illustrate the dangers associated with lay people making medical judgments or inferences from the record

10

without the aid of a medical expert. This Court, like the ALJ, has no medical expertise. ALJs are not medical experts and it is well-established that an ALJ may not substitute personal opinions for those of medical professionals. *See, e.g., Meece v. Barnhart*, 192 Fed. App'x. 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.") (*citing McCain v. Dir., Office of Workers' Comp. Programs*, 58 Fed. App'x 184, 193 (6th Cir. 2003) (citation omitted); *Pietrunti v. Director, Office of Workers' Comp. Programs, United States DOL*, 119 F.3d 1035, 1044 (2d Cir. 1997); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including [ALJs] of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.")); *accord Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 823-24 (N.D. Ohio 2009) ("Although the ALJ is charged with making credibility determinations, an ALJ 'does not have the expertise to make medical judgments.'"); *Stallworth v. Astrue*, 2009 U.S. Dist. LEXIS 131119, 2009 WL 2271336 at *9 (S.D. Ohio, Feb. 10, 2009) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record.") (*quoting Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)).

The Court also finds the reasoning of another case from this district with similar facts to be persuasive:

> [I]t appears that [the ALJ] has attempted to circumvent the treating source rule by giving greater weight to his own interpretation of the treatment notes. The ALJ's failure to identify other opinion evidence contained in the treatment notes leaves the Court to determine whether the notes actually contain opinions that are inconsistent with the formal treating source opinions or whether the ALJ has simply formulated his own medical opinion as a layperson interpreting the treatment notes. *See Martin v. Commissioner of Social Sec.*, No. 1:08-CV-00301, 2009 U.S. Dist. LEXIS 87928, 2009 WL 3110203 at *11 (S.D.Ohio Sept.24,

> 2009), unreported ("An ALJ, as a layperson, may not substitute his own opinions for those of the expert doctors.") *citing Brown v. Apfel*, 174 F.3d 59 (2nd Cir. 1999); *Miller v. Chater*, 99 F.3d 972 (10th Cir. 1996).
>
> ***
>
> The undersigned recommends that the Court find an additional flaw in the ALJ's logic. The ALJ considered treatment notes inherently more reliable because they are maintained in the course of treatment; however, his logic undermines his conclusion. Treatment notes are maintained for the purpose of improving a patient's condition, and they . . . may often speak in terms of maladies, not functional capacities. *Cf. Griffeth*, 217 Fed. Appx. 425, 2007 WL 444808 at *4 ("The RFC describes 'the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities.'") *quoting Howard*, 276 F.3d at 240. Therefore, it is improper for the ALJ to assign greater weight to treatment notes, which are in most instances not written with the intention of outlining functional limitations. When the ALJ considered the treatment notes to be inherently more reliable than treating source opinions, he simply chose to abandon the treating source rule, which requires him to look at the treating sources opinions and afford them controlling weight if they are "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2); 416.927(d)(2). Here, the ALJ did not follow the regulations and implemented a rule of logic that would always displace the treating source's opinion and permit the ALJ to substitute his own lay judgment on a review of the treatment notes.

*Harmon v. Astrue*, 2011 U.S. Dist. LEXIS 21939, 2011 WL 834138 (N.D. Ohio Feb. 8, 2011) report and recommendation adopted, 2011 U.S. Dist. LEXIS 21945, 2011 WL 825710 (N.D. Ohio Mar. 4, 2011). As such, the ALJ's reliance on her own lay interpretation of Dr. Price's treatment notes was an insufficient basis for rejecting Dr. Price's assessment of Robinson's functional limitations.

The Court finds that the ALJ erred by failing to give good reasons for rejecting the limitations assessed by Dr. Price. As such, in the interests of judicial economy, the Court declines to address Robinson's remaining assignments of error.

12

**VII. Decision**

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

                                                /s/ Greg White
                                                U.S. Magistrate Judge

Date: September 30, 2014